# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 15-1368V**
Filed: June 13, 2018

| | | |
|---|---|---|
| ERIN MOORE, *as parent and natural guardian of* P.C.S., *a minor child,* | * | UNPUBLISHED |
| Petitioner, | * | Special Master Oler |
| v. | * | Decision on Attorneys' Fees and Costs. |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | * | |
| Respondent. | * | |

*Amber D. Wilson,* Maglio Christopher and Toale, PA, Washington, DC, for Petitioner.

*Debra A. Filteau Begley,* U.S. Department of Justice, Washington, DC, for Respondent.

**DECISION ON ATTORNEYS' FEES AND COSTS[1]**

On November 12, 2015, Erin Moore ("Petitioner"), on behalf of her daughter, P.C.S., filed a petition for compensation in the National Vaccine Injury Compensation Program ("the Program"),[2] alleging that P.C.S. suffered from Guillain-Barré syndrome ("GBS") as a result of receiving an influenza ("flu") vaccination on October 24, 2014. Petition ("Pet.") at ¶¶ 2, 10, 13-14, ECF No. 1 at 1, 3-4. The parties filed a joint stipulation on April 20, 2017, representing that they had reached a settlement and that a decision should be entered awarding compensation in this case. ECF No. 36 at 2, ¶7. The special master previously assigned to this case issued a Decision on April 24, 2017, adopting the parties' stipulation and awarding compensation. *See* Decision, ECF No. 37.

[1] Because this Decision contains a reasoned explanation for the action in this case, I intend to post this Decision on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2012)). In accordance with Vaccine Rule 18(b), a party has 14 days to identify and move to delete medical or other information, that satisfies the criteria in 42 U.S.C. § 300aa-12(d)(4)(B). Further, consistent with the rule, a motion for redaction must include a proposed redacted decision. If, upon review, I agree that the identified material fits within the requirements of that provision, I will delete such material from public access.

[2] National Childhood Vaccine Injury Act of 1986 ("Vaccine Act" or "Vaccine Program"), Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I. Relevant Procedural History Regarding Attorneys' Fees and Costs

On November 21, 2017, Petitioner filed a motion for attorneys' fees and costs (AFC Motion), requesting $34,079.10 in attorneys' fees for work performed by her Vaccine Act attorneys ("the Maglio Firm" attorneys), $1,511.93 in litigation costs incurred by the Maglio Firm, and $6,300.00 in attorneys' fees incurred for the establishment of a guardianship for P.C.S.'s vaccine injury award, for a total of $41,891.03. Petitioner's ("Petr's") Application ("App.") dated November 21, 2017, ECF No. 43 at 1-2.[3] In accordance with General Order #9, Petitioner filed a signed statement indicating that she incurred out-of-pocket litigation expenses in the amount of $13.45. *See* Ex. 20, ECF No. 43-4. Petitioner also seeks reimbursement of those out-of-pocket expenses. *See* AFC Motion at 2-3.

On December 1, 2017, Respondent filed a response to Petitioner's AFC motion. *See* Respondent's Response, dated December 1, 2017, ECF No. 44. Respondent argues that "[n]either the Vaccine Act nor Vaccine Rule 13 contemplates any role for respondent in the resolution of a request by a petitioner for an award of attorneys' fees and costs." *Id*. at 1. Respondent adds, however, that he "is satisfied the statutory requirements for an award of attorneys' fees and costs are met in this case." *Id*. at 2. Additionally, he "respectfully recommends that [I] exercise [my] discretion and determine a reasonable award for attorneys' fees and costs." *Id*. at 3.

Petitioner filed a reply to Respondent's response on December 5, 2017. ECF No. 45. Petitioner argues (1) that Respondent's position regarding Petitioner's AFC Motion is "overly burdensome on the Court and prejudices Petitioner" (*id*. at 2); (2) that "Petitioner has met her burden of establishing reasonable fees and costs" (*id*. at 3); and (3) that her "attorneys' fees should be paid and her case costs reimbursed" (*id*. at 5).

This case was transferred to my docket on December 6, 2017. ECF No. 46. This matter is now ripe for a decision.

## II. Applicable Law and Discussion Regarding Petitioner's Vaccine Act Attorneys

The Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs." § 15(e)(1). If a petitioner succeeds on the merits of his or her claim, the award of attorneys' fees is automatic. *Id.*; *see also Sebelius v. Cloer*, 569 U.S. 369, 373 (2013). Thus, as a successful Vaccine Act petitioner, Ms. Moore is entitled to a fees and costs award.

---

[3] Petitioner filed her application for attorneys' fees and costs without proper pagination. *See generally* Petr's App. Thus, for ease of reference, I will use the page numbers generated from the CM/ECF filing reflected at the top of the page. Therefore, the page entitled "Motion For Payment of Petitioner's Attorneys' Fees and Reimbursement Of Case Costs Pursuant to 42 U.S.C. 300aa-15" will be cited as "Petr's App. at 1" with subsequent pages numbered accordingly.

### *A. Reasonable Hourly Rates and Time Expended*

#### *i. Requested Hourly Rates*

The Federal Circuit has endorsed the use of the lodestar approach to determine what constitutes "reasonable attorneys' fees" and "other costs" under the Vaccine Act. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1349 (Fed. Cir. 2008). Under this approach, "[t]he initial estimate of a reasonable attorney's fee" is calculated by "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Id*. at 1347-48 (quoting *Blum v. Stenson,* 465 U.S. 886, 888 (1984)). That product is then adjusted upward or downward based on other specific findings. *Id*.

Special masters have substantial discretion in awarding fees and may adjust a fee request *sua sponte*, apart from objections raised by Respondent, and without providing petitioners with notice and opportunity to respond. *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 209 (2009). Special masters need not engage in a line-by-line analysis of a petitioner's fee application when reducing fees. *See Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 729 (2011).

A "reasonable hourly rate" is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of petitioner's attorney." *Rodriguez v. Sec'y of Health & Human Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F.3d at 1349). There is a "limited exception" that provides for attorney's fees to be awarded at local hourly rates when "the bulk of the attorney's work is done outside the forum jurisdiction" and "there is a very significant difference" between the local hourly rate and forum hourly rate. *Id*. This is known as the *Davis County* exception. *See Hall v. Sec'y of Health & Human Servs.*, 640 F.3d 1351, 1353 (2011) (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)).

The majority of the Maglio Firm's work on this case was performed in Washington, D.C.,[4] and thus, forum rates apply. For cases in which forum rates apply, *McCulloch* provides the framework for determining the appropriate hourly rate range for attorneys' fees based upon the attorneys' experience. *See McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has

---

[4] Ms. Wilson became counsel of record in this case on March 29, 2016, taking over as counsel of record from another attorney that is also employed by the Maglio Firm, Ms. Ann Toale. *See* ECF No. 18; *see also* Order of 3/29/2016, granting Petitioner's Motion to Substitute Counsel. In examining the billing records submitted with this instant AFC Motion (*see* Ex. 17 at 1-19, ECF No. 43-1), I note that Petitioner seeks attorneys' fees for 59.3 hours of work performed by Ms. Wilson from her Washington, D.C. office (*see id.* at 19), which constitutes the majority of the attorney hours billed in this case (*id.*). Thus, I find that the majority of the work performed in this case was conducted in Washington, D.C.

accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[5] Petitioner's AFC Motion requests varying forum hourly rates for three attorneys of the Maglio Firm -- Ms. Wilson, Ms. Toale, and Mr. Caldwell -- in addition to nine paralegals, and one law clerk. *See* Ex. 17 at 19. I will discuss the requested hourly rates below.

**1. Ms. Amber Wilson**

Petitioner requests that Ms. Wilson's hourly rates be set at $301.00 for work performed in 2016, and $308.00 for work performed in 2017. *See* Ex. 17 at 9-18. I find that the appropriate hourly rate for work performed in 2016 is $275.00.[6] The reduced rates are consistent with past decisions from other special masters. *See Noblett v. Sec'y of Health & Human Servs.*, No. 14-969V, 2017 WL 3033932 (Fed. Cl. Spec. Mstr. June 15, 2017); *McCosh v. Sec'y of Health & Human Servs.*, No. 14-1089V, 2016 WL 8376852 (Fed. Cl. Spec. Mstr. Nov. 7, 2016); *Kaufman v. Sec'y of Health & Human Servs.*, No. 15-1045V, 2016 WL 8347656 (Fed. Cl. Spec. Mstr. Nov. 7, 2016); *Solomon v. Sec'y of Health & Human Servs.*, No. 14-0748V, 2016 WL 8257673 (Fed. Cl. Spec. Mstr. Oct. 27, 2016).

In 2017, Ms. Wilson had five years of experience in practice. The 2017 Hourly Rate Fee Schedule sets forth an attorneys' fees range of $230-$307 per hour for an attorney of Ms. Wilsons' experience in 2017. *See Office of Special Masters, Attorneys' Forum Hourly Rate Fee Schedule: 2017*, *supra* at n.5. Ms. Wilson's requested hourly rate of $308.00 is outside that range and will be reduced accordingly. Special Master Sanders previously set Ms. Wilson's rate to $290.00 per hour for work performed in 2017, basing that hourly rate on Ms. Wilson's experience and background. *See Noblett v. Sec'y of Health & Human Servs.*, No. 14-969V, 2017 WL 3033932 (Fed. Cl. Spec. Mstr. June 15, 2017). I find Special Master Sanders' analysis to be well-reasoned and persuasive, and will follow her approach in this instant fees request.

Accordingly, Petitioner's Vaccine Act attorneys' fees award is reduced by $**1,401.80**[7] to

---

[5] The fee schedules are posted on this Court's website. *See Office of Special Masters, Attorneys' Forum Hourly Rate Fee Schedule: 2015-2016*, https://www.uscfc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule2015-2016.pdf (last visited on June 6, 2018); *see also Office of Special Masters, Attorneys' Forum Hourly Rate Fee Schedule: 2017*, https://www.uscfc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule-2017.pdf (last visited on June 6, 2018).

[6] Ms. Wilson has been admitted to the Florida Bar since 2012. *See* Ex. 21 at 1. Accordingly, the 2015-2016 Hourly Rate Fee Schedule sets forth an attorneys' fees range of $225 to $300 per hour for an attorney of Ms. Wilsons' experience (between 4-7 years of experience in practice in 2016). *See Office of Special Masters, Attorneys' Forum Hourly Rate Fee Schedule: 2015-2016, supra* at n.5.

[7] Petitioner's AFC Motion reflects that she seeks attorneys' fees for 41.80 hours of work performed by Ms. Wilson in 2016, at an hourly rate of $301.00, for a total of $12,581.80. *See* Ex. 17 at 19. Moreover, she seeks compensation for 17.50 hours of work performed by Ms. Wilson in 2017, at an hourly rate of $308.00, for a total of $5,390.00. *Id*. Thus, the following

reflect Ms. Wilson's hourly rate adjustments.

### 2. Ms. Ann Toale

Petitioner requests that Ms. Toale be awarded an hourly rate of $300.00 for work performed in 2015, and $367.00 for work performed in 2016. *See* Ex. 17 at 4-9, 19. The 2015 through 2016 hourly rates are in accordance with those previously awarded to Ms. Toale, and I find them to be reasonable in this instance. *See Battistone v. Sec'y of Health & Human Servs.*, No. 09-878V, 2017 WL 2333627 (Fed. Cl. Spec. Mstr. May 2, 2017).

### 3. Mr. Franklin John Caldwell

Petitioner requests that Mr. Caldwell be awarded an hourly rate of $300.00 for work performed in 2015, and $367.00 for work performed in 2017. I find that his 2015 and 2017 hourly rates are reasonable, as they have been previously awarded to Mr. Caldwell in a prior case. *See, e.g.*, *Johnson v. Sec'y of Health & Human Servs.*, No. 10-578V, 2017 WL 1881005 (Fed. Cl. Spec. Mstr. Apr. 14, 2017).[8]

### 4. Paralegals

Additionally, nine paralegals from the Maglio Firm worked on this case (*see* Ex. 17 at 19); for those paralegals, Petitioner requests a variety of hourly rates ranging from $95.00 to $145.00 (*id.*). I find those paralegal hourly rates to be reasonable and will award them in full.

### 5. Law clerks

Petitioner requests an hourly rate of $150.00 for Jessica Olins, a law clerk of the Maglio Firm who worked on this matter in 2017. *See* Ex. 17 at 17, 19. Ms. Olin's requested rate is

---

calculation reflects the requisite reductions made to Petitioner's fees request:

| | | |
|---|---|---|
| 41.80 hours x $275.00 (Ms. Wilson's awarded hourly rate for 2016) | = | $11,495.00 |
| + 17.50 hours x $290.00 (Ms. Wilson's awarded hourly rate for 2017) | = | $5,075.00 |
| **Fees Total Awarded to Ms. Wilson** | = | $16,570.00 |

Amount Reduced from Petitioner's Fees Award = Requested Fees Total for Ms. Wilson ($17,971.80) – Fees Total Awarded to Ms. Wilson ($16,570.00) = **$1,401.80**.

[8] In *Johnson*, Special Master Sanders awarded Mr. Caldwell a forum hourly rate of $300.00 for work performed in years prior to 2016. *Johnson*, at *3. Moreover, after analyzing the requested hourly rate increase for Mr. Caldwell for work performed in 2017 versus his prior year rate for 2016, Special Master Sanders determined that Mr. Caldwell's rate increase was within the acceptable customary year-over-year growth rate for attorneys' fees found in *McCulloch*; accordingly, she granted Mr. Caldwell a 2017 hourly rate of $367.00. *Johnson*, at *3. I find Special Master Sanders' analysis to be well-reasoned and persuasive, and will follow her approach in this instant fees request.

outside the appropriate 2017 Fee Schedule hourly rate range of $128.00-$148.00 for non-attorney work performed in a Vaccine Act case. *See Office of Special Masters, Attorneys' Forum Hourly Rate Fee Schedule: 2017*, *supra* at n.5. Thus, Ms. Olin's rate will reduced to $148.00, consistent with the higher end of the appropriate 2017 range. *Id*.

Accordingly, Petitioner's Vaccine Act attorneys' fees award is reduced by **$3.00**[9] to reflect Ms. Olins' hourly rate adjustments.

***ii. Hours Reasonably Expended***

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). "Unreasonably duplicative or excessive billing" includes "an attorney billing for a single task on multiple occasions, multiple attorneys billing for a single task, attorneys billing excessively for intra office communications, attorneys billing excessive hours, [and] attorneys entering erroneous billing entries." *Raymo v. Sec'y of Health & Human Servs.*, 129 Fed. Cl. 691, 703 (2016). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See, e.g., McCulloch*, 2015 WL 5634323, at *26.

Additionally, "[w]hen case-related work is performed during travel, the time sheets should reflect the work performed and the hours spent performing it." *O'Neill v. Sec'y of Health & Human Servs.*, No. 08-243V, 2015 WL 2399211, at *7 (Fed. Cl. Spec. Mstr. Apr. 28, 2015) (quoting *Gruber ex rel. Gruber* v. *Sec'y of Health & Human Servs.*, 91 Fed. Cl. 773, 788 (2010)). And "[a]bsent documentation of the work performed by an attorney while he or she was traveling, the attorney will not be compensated at his or her full hourly rate for travel time." *Id*. Instead, those travel hours will be compensated "at one-half the standard hourly rate." *Id*.

Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton*, 3 F.3d at 1522. In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen*, 102 Fed. Cl. at 728-29 (affirming the special master's reduction of attorney and paralegal hours); *see also Guy v. Sec'y of Health & Human Servs*., 38 Fed. Cl. 403, 406 (1997).

---

[9] Petitioner seeks compensation for 1.50 hours of work performed in 2017 by Ms. Olins, at an hourly rate of $150.00, for a total of $225.00. *See* Ex. 17 at 19. Thus, the following calculation reflects the requisite reductions made to Petitioner's fees request:

**Fees Total Awarded** = 1.5 hours x $148.00 (awarded hourly rate for Ms. Olins) = $222.00.

**Amount Reduced** = Requested Fees Total for Ms. Olins ($225.00) – Fees Total Awarded to Ms. Olins ($222.00) = **$3.00**.

### *b. Hourly rate for Mr. Caldwell's travel time*

In this case, Mr. Caldwell billed 2.2 hours for travel in which he did not provide any description of the case-specific work that he performed during his travel.[10] I will thus award that time to be compensated at one-half of Mr. Caldwell's normal hourly rate. *See O'Neill*, supra. This results in a reduction of Petitioner's Vaccine Act attorneys' fees award by **$330.00**.[11]

### *c. Reduction of billable hours*

Based on my review of the billing records submitted with Petitioner's AFC Motion (*see generally* Ex. 17), I find that a number of the hours billed by the Maglio Firm were "excessive, redundant, or otherwise unnecessary." *Saxton*, 3 F.3d at 1521. This is especially so since Petitioner's counsel of record acknowledged in her submitted affidavit that "[t]his particular case was straight forward." *See* Ex. 21 at 4, ¶ 23.

For example, there are billed tasks in which attorneys and/or paralegals of the Maglio Firm performed administrative tasks[12] such as: reviewing and paying invoices,[13] saving and uploading documents to internal files,[14] and electronically filing documents and updating internal

---

[10] *See* Mr. Caldwell's billing entries on the following dates: 11/10/2015, Ex. 17 at 5 (billing 0.5 hours at his full 2015 hourly rate for travel time to San Francisco); 11/11/2015, *id*. (billing 1.2 hours at his full 2015 hourly rate for ground travel around San Francisco); 11/16/2015, *id*. at 6 (billing 0.5 hours at his full 2015 hourly rate for return travel from San Francisco).

[11] 2.2 hours of travel time x $150.00 (reflecting one-half of Mr. Caldwell's 2015 hourly rate) = $330.00.

[12] The billing entries mentioned *infra* are merely examples and are not exhaustive; they provide a sampling of the non-compensable administrative tasks billed by the Maglio Firm.

[13] *See*, *e.g.*, Ex. 17 at 2, billing entry of 1/16/2015 ("Send out payment for medical records"); *id.*, billing entry of 1/16/2015 ("Review and approve payment to Bactes for medical records from Marin County Hospital"); *id.* at 3, billing entry of 2/16/2015 ("Review and approve payment to Dr. Maioriello for medical records, update notes to file, set follow up"); *id.* at 5, billing entry of 10/23/2015 ("Review and approve payment for invoice"); *id.*, billing entry of 11/10/2015 ("Receive and review attorney travel receipt"); *id.* at 7, billing entry of 12/21/2015 ("Review and approve multiple travel expenses for attorney travel"); *id.* at 8, billing entry of 1/18/2016 ("Request payment to attorney for travel reimbursement"); *id.*, billing entry of 2/25/2016 ("Review and approve payment for invoice"); *id.* at 9, billing entry of 3/2/2016 ("Process payment to Healthport for records from California Pacific Medical Center and update file accordingly"); *id.*, billing entry of 3/17/2016 ("Review and approve payment for invoice"); *id.*, billing entry of 3/18/2016 ("Process payment to Sutter Health for records and update file accordingly"); *id.* at 10, billing entry of 4/7/2016 ("Review and approve payment for invoice").

[14] *See*, *e.g.*, Ex. 17 at 7, billing entry of 12/16/2015 ("Receive photos from client and save into file. Convert to pdf. Forward to attorney."); *id.* at 8, billing entry of 2/1/2016 ("Scan in damages documents"); *id.*, billing entry of 2/4/2016 ("Upload and organize client provided damages

files.[15] A review of the billing entries also reflects that there are numerous entries in which the Maglio Firm attorneys and/or paralegals billed for excessive intra office e-mail communications.[16]

Moreover, I note that there are numerous billing entries from the Maglio Firm which constitute block billing, wherein attorneys and/or paralegals billed for multiple tasks in a single entry. Some of the blocks contain time that is not compensable, along with time that is compensable.[17] For such entries, it is impossible to determine the precise portion of the time billed that should be compensated. I note that it is counsel's burden to document the fees claimed. *See Rodriguez v. Sec'y of Health & Human Servs.*, No. 06-559V, 2009 WL 2568468, at

---

documents"); *id.* at 10, billing entry of 4/13/2016 ("Receipt and upload medicaid lien to client file").

[15] *See, e.g.*, Ex. 17 at 2, billing entry of 1/21/2015 ("Process and update client file with mailing documentation"); *id.* at 6, billing entry of 11/16/2015 ("Receipt of instructions from attorney and electronically file Motion to Issue Subpoena. Receipt of electronic confirmation of same and update client file accordingly"); *id.* at 7, billing entry of 1/4/2016 ("Receipt of instructions from attorney and electronically file Notice of Filing on CD and Statement of Completion. Receipt of electronic confirmation of same and update client file accordingly"); *id.* at 9, billing entry of 3/14/2016 ("Receipt of instructions from attorney and electronically file Consented Motion to Substitute Attorney. Receipt of electronic confirmation of same and update client file accordingly"); *id.* at 16, billing entry of 4/21/2017 ("Receive notice of filed stipulation. Download fully executed stipulation from ECF site. Save to file and forward to atty."); *id.* at 17, billing entry of 5/31/2017 ("Receive judgment and save to file. Forward to atty and update file").

[16] *See, e.g.*, Ex. 17 at 4-15, billing entries documenting intra office communications on the following dates: 9/18/2015; 9/21/2015; 9/22/2015; 10/05/2015; 10/08/2015; two separate entries on 10/22/2015; 11/17/2015; 12/28/2015; 1/4/2016; 3/3/2016; 3/15/2017.

The billing entries mentioned above are merely examples and are not exhaustive; they provide a sampling of the types of intra office communications billed by the Maglio Firm.

[17] *See, e.g.*, Ex. 17 at 1-14, billing entries of 12/16/2014; 2/9/2015; 6/17/2015; 11/10/2015; 11/19/2015; 11/20/2015; 12/23/2015; 1/8/2016; three separate entries on 2/22/2016; 3/1/2016; 5/2/2016; 6/2/2016; 10/25/2016 (collectively reflecting paralegals block billing for compensable tasks with non-compensable tasks, such as: creating internal files, mailing correspondences, updating internal files, reviewing and paying invoices, and calendaring deadlines). *See also, e.g.*, billing entries of: 10/6/2015 and 4/1/2016 (reflecting attorneys block billing for compensable tasks with non-compensable tasks, such as: sending intra office emails and saving internal documents to file).

The above-mentioned entries are merely examples and are not exhaustive; they provide a sampling of numerous instances in which the billing entries reflect time billed for compensable tasks with non-compensable tasks.

*8 (Fed. Cl. Spec. Mstr. July 29, 2009). *See also Broekelschen v. Sec'y of Health & Human Servs*., 2008 U.S. Claims LEXIS 399, at **13-14 (Fed. Cl. Spec. Mstr. Dec. 17, 2008) (reducing petitioner's attorneys' fees and criticizing her for block billing). Indeed, the Vaccine Program's *Guidelines for Practice* state as follows: "[e]ach task should have its own line entry indicating the amount of time spent on that task. Lumping together several unrelated tasks in the same time entry frustrates the court's ability to assess the reasonableness of the request."[18]

Accordingly, for the reasons outlined above, I will reduce the total award of Petitioner's Vaccine Act attorneys' fees, with the hourly rate reductions and travel time modifications discussed above, by 10%. This results in a reduction of Petitioner's Vaccine Act attorneys' fees award of **$3,234.43**.[19]

#### *iii. Summary of Total Fees*

As outlined above, for her Vaccine Act attorneys, Petitioner is awarded attorneys' fees in the amount of **$29,109.87**.[20]

### *B. Reasonable Costs*

Similar to attorneys' fees, a request for reimbursement of costs must be reasonable. *Perreira v. Sec'y of Health & Human Servs*., 27 Fed. Cl. 29, 34 (Fed. Cl. 1992). Petitioner requests $1,511.93 in attorneys' costs, consisting of filing fees, travel costs incurred by counsel in meeting with Petitioner, and service and copying costs associated with prosecuting this claim.

---

[18] *Guidelines for Practice Under the National Vaccine Injury Compensation Program* ("*Guidelines for Practice*") at 68 (revised April 21, 2016) found at http://www.uscfc.uscourts.gov/sites/default/files/GUIDELINES-FOR-PRACTICE-4212016.pdf (last visited on June 8, 2018) (Section X, Chapter 3, Part B(1)(b)).

[19]

| | | |
|---|---|---|
| Attorneys' fees requested | = | $34,079.10 |
| Reduction for Ms. Wilson's hourly rate modifications | = | ($1,401.80) |
| Reduction for Ms. Olins' hourly rate modifications | = | ($3.00) |
| Reduction for travel time | = | ($330.00) |
| **Subtotal** | = | $32,344.30 |
| **10% reduction amount** | **=** | **$3,234.43** |

[20]

| | | |
|---|---|---|
| Attorneys' fees requested | = | $34,079.10 |
| Reduction for Ms. Wilson's hourly rate modifications | = | ($1,401.80) |
| Reduction for Ms. Olins' hourly rate modifications | = | ($3.00) |
| Reduction for travel time | = | ($330.00) |
| Subtotal | = | $32,344.30 |
| 10% reduction | = | ($3,234.43) |
| **Total awarded Vaccine Act attorneys' fees** | **=** | **$29,109.87** |

*See generally* Ex. 18. After reviewing the costs invoices attached to Petitioner's AFC Motion, I find the requested litigation costs to be reasonable, and will award them in full.

Additionally, Petitioner's requested out-of-pocket litigation expense of $13.45 also appears to be reasonable, and will be awarded in full.

## III. Applicable Law and Discussion Regarding Petitioner's Attorneys' Fees For The Establishment Of A Guardianship For P.C.S.'s Vaccine Injury Award

Petitioner also seeks $6,300.00 in attorneys' fees incurred for the establishment of a guardianship for P.C.S.'s vaccine injury award.[21] *See* AFC Motion at 2, ¶ 5; *see also* Ex. 19, ECF No. 43-3.

The Vaccine Act limits the amount of "compensation to cover petitioner's . . . costs" to those "incurred in any proceeding on [a Vaccine Act] petition." § 15(e)(1). In cases involving a minor or a decedent, such costs often include those incurred in establishing an estate or guardianship to receive and dispense the award. These costs are generally compensable under the Vaccine Act if establishing the estate or guardianship is "an essential prerequisite condition" to obtaining an award that must "be fulfilled in order for [the] award to be made." *Haber ex rel. Haber v. Sec'y of Health & Human Servs.*, No. 09-458V, 2011 WL 839111, at *2 (Fed. Cl. Spec. Mstr. Feb. 14, 2011). In other words, the costs associated with fulfilling a condition to receiving an award that "is set by either court order or as an element of the agreed-upon settlement with respondent" are generally compensable under the Vaccine Act. *Ceballos ex rel. Ceballos v. Sec'y of Health & Human Servs.*, No. 99-97V, 2004 WL 784910, at *20-22 (Fed. Cl. Spec. Mstr. Mar. 25, 2004); *see also Kenney v. Sec'y of Health & Human Servs.*, No. 09-0738V, 2012 WL 6013214, at *1 (Fed. Cl. Spec. Mstr. Oct. 24, 2012) (collecting cases awarding compensation for "fees and costs of creating a guardianship or conservatorship").[22] I find the cases cited in this section to be well-reasoned and persuasive in formulating my own analysis of this issue in this instant AFC Motion.

As mentioned *supra*, Petitioner requests compensation for the attorney who established a guardianship for P.C.S.'s vaccine injury award. *See* AFC Motion at 2, ¶ 5; *see also* Ex. 19, ECF No. 43-3. Similar to the petitioner in *Kenney*, *supra*, I find that it was necessary for Ms. Moore, as the parent and natural guardian of P.C.S., to set up a legal guardianship or conservatorship before the Vaccine Act award in this case could be paid. *Kenney*, at *2. This is especially so since Respondent set a prerequisite in the joint stipulation, requesting proof that Petitioner has

---

[21] Petitioner retained a California law firm -- The Law Offices of Michael S. Biggs -- to represent her in establishing a guardianship for P.C.S.'s vaccine injury award. *See* Ex. 19. Petitioner thus submits an invoice from The Law Offices of Michael S. Biggs, which outlines the outstanding attorneys' fees incurred by Petitioner for the establishment of a guardianship. *Id.*; AFC Motion at 2, ¶ 5.

[22] Some special masters have referred to this test as a "but for" test -- *i.e.*, whether, "but for" an Order by the Court or a demand by Respondent, the cost would have been incurred by Petitioner. *See Ceballos*, 2004 WL 784910, at *20.

been "duly authorized to serve as [a] guardians/conservators [*sic*] of P.C.S.'s estate." Stipulation, ECF No. 36 at 4-5, ¶16. Thus, I find that the establishment of a guardianship in this case was "an essential prerequisite condition" to obtaining P.C.S.'s Vaccine Act award that had to "be fulfilled in order for [the] award to be made." *Haber, supra*, at *2. Accordingly, I will grant Petitioner's incurred attorneys' fees for the establishment of a guardianship for P.C.S.'s vaccine injury award. The amount sought for the establishment of the guardianship -- $6,300.00 -- was not disputed by Respondent, and appears to be reasonable. Thus, I will grant that amount in full.

## IV. Total Award Summary

Accordingly, I award the following amounts:

(1) **$30,621.80**, representing $29,109.87 in attorneys' fees and $1,511.93 in costs, in the form of a check payable jointly to Petitioner and her counsel, Amber D. Wilson;[23]

(2) **$13.45**, representing Petitioner's out-of-pocket expenses, in the form of a check payable to Petitioner, Erin Moore, as parent and natural guardian of P.C.S.;[24] and

(3) **$6,300.00**, representing Petitioner's outstanding attorneys' fees incurred in the establishment of a guardianship for P.C.S.'s vaccine injury award, in the form of a check payable jointly to Petitioner and The Law Offices of Michael S. Biggs.[25]

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[26]

**IT IS SO ORDERED.**

**/s/ Katherine E. Oler**
Katherine E. Oler
Special Master

---

[23] Pursuant to Petitioner's request (*see* AFC Motion at 3, ¶ 10), this check shall be forwarded to the following business address: Maglio Christopher & Toale, PA, 1605 Main Street, Suite 710, Sarasota, Florida 34236.

[24] The check payable to Petitioner, Erin Moore, shall be forwarded to the Maglio Firm's business address notated in footnote 23, above. *See supra* at n.23.

[25] The check payable jointly to Petitioner and The Law Offices of Michael S. Biggs shall be forwarded to the Maglio Firm's business address notated in footnote 23, above. *See supra* at n.23.

[26] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.